**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

COVENANT MEDICAL CENTER
3421 WEST NINTH STREET
WATERLOO, IA 50702

ST. JOSEPH MERCY OAKLAND
44405 WOODWARD AVENUE
PONTIAC, MI 48341

       Plaintiffs,

                                     CIVIL ACTION NO.

VS.

MICHAEL O. LEAVITT, IN HIS
OFFICIAL CAPACITY AS SECRETARY
OF THE DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

       Defendant.

_____/

ALAN J. SEDLEY (Bar No. OH0017)
LAW OFFICES OF ALAN J. SEDLEY
21550 Oxnard Street   Suite 880
Woodland Hills, CA   91367
Phone: (818) 716-6800
Fax: (818) 716-5001
asedley02@sprintpcs.com
COUNSEL FOR PLAINTIFF
_____/

**COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE
AGENCY DECISION ON MEDICARE REIMBURSEMENT**

**I.**

**INTRODUCTION**

1.      The instant matter involves procedures established internally by the Provider Reimbursement Review Board (hereinafter, "PRRB" or "Board"), an administrative tribunal that adjudicates disputes between providers of Medicare services on the one hand, and the federal government on the other hand.  In the case at hand, COVENANT MEDICAL CENTER (hereinafter, "COVENANT"), and ST. JOSEPH MERCY OAKLAND (hereinafter, "ST. JOSEPH") allegedly did not strictly comply with one such internal procedural guideline, and pertaining to the Board's demand that each submit timely affidavits, and as a result, the PRRB has unilaterally dismissed the appeal of COVENANT and ST. JOSEPH (hereinafter collectively referred to as "Plaintiffs").  Unless the Court intervenes, this dismissal shall operate to deprive Plaintiffs of each of its right to be heard on reimbursement issues that could be resolved favorably to Plaintiffs for hospital services furnished to Medicare patients during the 1997 fiscal year.

**II.**

**JURISDICTION AND VENUE**

2.      This is a civil action brought to obtain judicial review of a final agency decision rendered by the Medicare Provider Reimbursement Review Board ("PRRB").  This action is timely filed pursuant to 42 U.S.C. § 1395oo(f)(1).

3.      The instant action arises under Title XVIII of the Social Security Act, as amended (42 U.S.C. §§ 551 *et seq.*) hereinafter referred to as the "Medicare Act" or the "Act", which establishes

the Medicare program (the "Medicare Program" or the "Program"), and the Administrative

Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*

4.    This Court has jurisdiction under 42 U.S.C. § 1395oo(f) (appeal of final Medicare

program agency decision) and 28 U.S.C. § 1331 (federal question).  Venue lies in this judicial district

pursuant to 42 U.S.C. § 1395oo(f) and § 28 U.S.C. § 1391 (e).  This Court has authority to grant the

relief requested under 42 U.S.C. § 1395oo(f) and 28 U.S.C. §§ 2201-2202.

## III.

## PARTIES

5.    Plaintiff, COVENANT MEDICAL CENTER (hereinafter, "COVENANT") is an

acute care, inpatient hospital located in Waterloo, Iowa, is owned and controlled by the WHEATON

FRANCISCAN HEALTHCARE, and is organized as a nonprofit corporation exempt from federal

income taxation as a charitable organization.  During the relevant period, COVENANT was certified

as a "provider of services" participating in the Medicare program within the meaning of 42 U.S.C.

§ 1395x(u).

6.    Plaintiff, ST. JOSEPH MERCY OAKLAND (hereinafter, "ST. JOSEPH") is an

acute care, inpatient hospital located in Pontiac, Michigan, is owned and controlled by TRINITY

HEALTH, and is organized as a nonprofit corporation exempt from federal income taxation as a

charitable organization.  During the relevant period, ST. JOSEPH was certified as a "provider of

services" participating in the Medicare program within the meaning of 42 U.S.C. § 1395x(u).

7.    Defendant, Michael O. Leavitt, Secretary of the Department of Health and Human

Services (hereinafter referred to as the "Secretary"), or his predecessors in office, is the federal

officer responsible for the administration of the Medicare Program pursuant to the Medicare Act.

-3-

The Secretary has delegated administration of the Medicare Program to the Centers for Medicare and Medicaid Services ("CMS").

## IV.

## <u>INTRODUCTION</u>

8.    By this action, Plaintiffs challenge the Secretary's application of a Medicare statute that directs the Secretary to make additional Medicare payments to hospitals that serve "a significantly disproportionate number of low income patients."  These additional payments are commonly referred to as disproportionate share hospital or "DSH" payments.  Under the relevant statute, the term "low-income" patients includes patients eligible for medical assistance under a state plan of medical assistance approved under Title XIX of the Social Security Act.

When computing Plaintiffs' eligibility for additional DSH payments during the fiscal year at issue, the Secretary applied a policy requiring the exclusion of hospital days attributable to patients who were eligible for medical assistance under a State plan (hereinafter, "General Assistance") approved under Title XIX.  The Secretary's action in this case, to the extent that it precludes patient days attributable to General Assistance populations from factoring into the DSH payment calculation for portions of any cost reporting period contravenes the plain and unambiguous wording of the controlling Medicare statute, is inconsistent with congressional intent, and is arbitrary, capricious and otherwise contrary to law.

Further, the Secretary's application of the DSH statute inappropriately draws a distinction between similarly situated Medicare providers in violation of the right to equal protection of laws afforded by the United States Constitution.

## V.

## MEDICARE PAYMENT

9.      The Medicare Act establishes a system of health insurance for the aged and the disabled.  The Medicare program is federally funded and is administered by the Secretary through the Centers for Medicare and Medicaid Services ("CMS").  42 U.S.C. § 1395kk; 42 Federal Register ("Fed Reg.") 13,202 (Mar. 9, 1997).

10.     Under the Medicare Act, an eligible Medicare beneficiary is entitled to have payment made by the Medicare Program on his/her behalf for inpatient and outpatient hospital services provided to him/her by a hospital participating in the Medicare Program as a "provider of services." As such, the Secretary reimburses health care providers, including hospitals, for services provided Medicare patients.  42 U.S.C. § 1395 to 1395ccc.  Medicare reimbursement is typically handled by fiscal intermediaries, such as insurance companies, pursuant to contracts with the Secretary. 42 U.S.C. §1395h. The fiscal intermediary makes interim payments to health care providers, then determines the proper amount of reimbursement for the entire fiscal year.  42 U.S.C. § 1395h(a).

11.     A health care provider seeking reimbursement must submit an annual cost report to its fiscal intermediary. 42 C.F.R. § 413.20(a)-(b); 413.24(f).  The fiscal intermediary then audits the cost report, determines the reimbursement amount to which the provider is entitled under the statute and regulations, and issues a Notice of Amount of Medicare Program Reimbursement ("NPR"). 42 C.F.R. § 405.1803.  The fiscal intermediary that acted on behalf of the Secretary with respect to Plaintiffs was Cahaba Government Benefit Administrators. (hereinafter, "Intermediary").  The intermediary acts as agent of the Defendant Secretary.

12.     A provider dissatisfied with its intermediary's decision may file an appeal with the Provider Reimbursement Review Board ("PRRB") within 180 days of the date of the NPR. 42 U.S.C. § 1395oo(f)(1). In addition, Medicare regulations allow a fiscal intermediary to reopen a provider's cost report and issue a revised NPR within three years of issuing the original NPR. 42 C.F.R. § 405.1885.

13.     In exercising its authority to conduct hearings, the PRRB must comply with all the provisions of the Medicare Act and regulations issued thereunder, as well as CMS Rulings issued under the authority of the Administrator of the CMS. 42 C.F.R. § 405.1867.

14.     A decision of the PRRB is final unless the Secretary, on the Secretary's own motion, and within sixty days after the provider of services is notified of the PRRB's decision, reverses, affirms, or modifies the PRRB's decision. 42 U.S.C. § 1395oo(f)(1).

15.     As noted more fully, below, the PRRB reached a final decision to close *each* of Plaintiffs' appeals based solely upon erroneous, jurisdictional grounds; that is, the Board required, in a correspondence sent to the representative of Plaintiffs, submission of affidavits from each provider's corporate home office attesting to a variety of Board inquiries and providing information concerning the involvement of other providers in similar appeals within each corporate structure. Though Plaintiffs' representative did in fact provide a *timely* written response to the Board in a good faith effort to address the Board's inquiries, the Board, denying that it had received the correspondence from Plaintiffs' representative within the arbitrarily chosen time period of thirty days, thereupon dismissed Plaintiffs' appeals.

16.     By virtue of the Board's dismissal of Plaintiffs' appeal, presumably for its alleged failure to provide the requested affidavits within a thirty day period, that decision is considered a

final decision, is not subject to review by the Secretary, 42 U.S.C. § 1395oo(f)(1), and is ripe to be considered by this Court. That is to say, a PRRB determination denying jurisdiction or other determination dismissing an appeal prior to a decision on the merits is a final determination subject to court review pursuant to Section 1395oo(f).

## VI.

## THE MEDICARE DSH CALCULATION

17.     When Congress enacted the Medicare Prospective Payment System ("PPS") in 1983, it authorized the Secretary to provide an adjustment to PPS payments for hospitals that served a disproportionate share of low-income patients. 42 U.S.C. § 1395ww(d)(5)(C)(I).

18.     The Secretary delegated to CMS the authority to administer DSH adjustments as part of the PPS reimbursement system. CMS, in turn, delegates the responsibility to the fiscal intermediaries who notify hospitals of their DSH adjustments in their NPR's.

19.     The intermediaries calculate the DSH adjustment by adding two fractions known as the "Medicare Proxy" and the "Medicaid Proxy". 42 U.S.C. § 1395ww(d)(5)(F)(vi).

20.     The Medicare Proxy, which is based on the number of low-income Medicare patients served by a given provider, is not at issue in this case. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).

21.     The Medicaid Proxy accounts for all patient days related to patients who are not entitled to Medicare Part A benefits, but who are eligible for medical assistance under a State Plan approved under Title XIX:

> The fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which consists of patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX of this chapter, but who were not entitled to benefits under Part A of this

subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

22.     A larger number of patient days in the numerator means a larger DSH adjustment for the provider.

## VII.

## BOTH THE IOWA (COVENANT) AND MICHIGAN (ST. JOSEPH) STATE PLANS WERE APPROVED UNDER TITLE XIX

23.     Congress enacted Title XIX of the Social Security Act ("Medicaid") in 1965. Medicaid is a cooperative federal-state program that furnishes health care to persons who meet specified eligibility requirements, including low-income status.

24.     States participating in the Medicaid Program have a substantial amount of discretion in selecting the benefits provided under their Medicaid programs.  42 U.S.C. § 1396d.  Nevertheless, all states must furnish certain minimum benefits under their Medicaid program, including inpatient hospital services.  42 U.S.C. § 1396(a)(10)(A), 1396(a)(1).

25.     States have some flexibility in establishing payment rates for hospital services under their Medicaid programs. 42 U.S.C. § 1396(a)(13)(A).

26.     States that participate in the Medicaid program are required to develop a State Plan for delivery of medical assistance and submit it to the Secretary for approval. 42 U.S.C. § 1396.  This Title XIX "State Plan" must comply with certain requirements of the Medicaid statute set forth in 42 U.S.C. § 1396a.

27.     The State of Iowa (COVENANT), at all relevant times referred to in this Complaint, maintained a valid Title XIX plan approved by the Secretary, which included General Relief (or General Assistance).

28.     Under General Relief, Iowa hospitals are required to provide patient care to Iowa residents meeting certain low-income requirements.  General Relief provides a mechanism to pay for care to General Relief patients by compensating hospitals for the costs of providing such care.  General Relief is funded with state funds as well as federal matching payments under Medicaid (also known as federal financial participation (FFP)).  For all years relevant to this Complaint, General Relief's eligibility criteria and funding provisions have been set forth in Iowa's State Plan approved under Title XIX.

29.     Further, the State of Michigan (ST. JOSEPH), at all relevant times referred to in this Complaint, maintained a valid Title XIX plan approved by the Secretary, which included General Relief (or General Assistance).

30.     Under General Relief, Michigan hospitals are required to provide patient care to Michigan residents meeting certain low-income requirements.  General Relief provides a mechanism to pay for care to General Relief patients by compensating hospitals for the costs of providing such care.  General Relief is funded with state funds as well as federal matching payments under Medicaid (also known as federal financial participation (FFP)).  For all years relevant to this Complaint, General Relief's eligibility criteria and funding provisions have been set forth in Michigan's State Plan approved under Title XIX.

## VIII.

## THE SECRETARY WRONGFULLY EXCLUDED GENERAL ASSISTANCE DAYS FROM EACH HOSPITAL'S MEDICARE DSH CALCULATIONS

31.    In computing each Plaintiff Hospital's Medicare DSH adjustments for fiscal year 1997, the Medicare fiscal intermediary ("Intermediary") excluded those inpatient days under the Iowa, and under the Michigan General Relief Program from the Medicaid proxy of the calculation. The exclusion of these General Relief days unlawfully reduced each Plaintiff Hospital's DSH adjustment.

32.    For fiscal year 1997, each Plaintiff filed its timely appeal with the PRRB. In their respective appeals, each Plaintiff challenged CMS's policy under which it's DSH adjustment was calculated using a formula that excluded its state's General Relief days from the Medicaid Proxy of the DSH calculation. Each Plaintiff  sought to have all General Relief patient days included as patient days in computing its DSH adjustment.

33.    In its letter of January 25, 2008, the PRRB acknowledged receipt of the submissions by Plaintiffs to establish a group appeal (PRRB Case No. 07-0394G) within which both COVENANT and ST. JOSEPH would pursue their appeals.  Noting that the two Plaintiff hospitals were located in two different states, and therefore under two different "State Plans", the PRRB went on to note that it would be necessary for each Plaintiff to establish and participate in separate group appeals comprised of providers invoking the same state plan, as well as limiting each new group appeal to hospitals under the same control or ownership.  Such a group is known as a "common issue related party group appeal," or CIRP.  <u>See</u>, 42 C.F.R. § 405.1841(a)(2).    In furtherance of the establishment of CIRP groups, the PRRB required that each provider submit an affidavit, identifying,

among other things, all hospitals within each corporate ownership (i.e., Wheaton Franciscan Healthcare in the case of COVENANT, and Trinity Health, in the case of ST. JOSEPH), attestation that no other commonly owned or controlled hospital was participating in other group appeals of the issue at hand, and that other providers of the chain not pursuing the issue of general assistance days waive their rights to do so. Each provider was required to submit the affidavit, through its representative, within thirty days. A true and correct copy of the PRRB's letter dated January 25, 2008 is attached hereto as Exhibit "A."

34.    In response to the mandate of the PRRB, Plaintiffs' representative, Quality Reimbursement Services, sought the signed affidavits of each relevant party. Despite its best efforts, the representative was able to provide only the signed affidavit of the representative of Wheaton Franciscan Healthcare (COVENANT) within the thirty day time period; the representative continued to seek the signed affidavit of the representative of Trinity Health.

35.    The representative did in fact send the above-noted, signed affidavit of Wheaton Franciscan Healthcare, to the PRRB within the required thirty days, as evidenced in its letter sent to the PRRB dated February 21, 2008 (a true and correct copy attached hereto as Exhibit "B"). In its letter, the representative points out that the signed affidavit of the representative from Wheaton Franciscan Healthcare was enclosed. The author of that letter also notes that as to the affidavit concerning Trinity Health:

> "We are awaiting a similar confirmation from a representative from Trinity Health affirming that no other hospital in the organization are participating in any other group appeals of this issue. If this is not the

case, then we will establish a CIRP appeal for St. Joseph Mercy-Oakland for FYE 06/30/1997."

36.     Despite the good faith efforts of Plaintiffs' representative to comply with the requests of the PRRB, including but not limited to providing one requested affidavit within the required thirty day period, and providing a good faith explanation of the efforts underway to secure the second, requested affidavit, the PRRB nevertheless advised Plaintiffs (through their representative) by letter dated March 20, 2008 that they (a) did not receive a reply to their request (set forth in its January 25, 2008 letter) and (b) were "closing the case" and removing it "from the Board's docket."  A true and correct copy of that letter is attached hereto as Exhibit "C".

37.     The representative for Plaintiffs responded to the PRRB's March 20, 2008 letter in its correspondence dated March 31, 2008, enclosing a copy of the United Parcel Service tracking label dated February 21, 2008 and evidencing receipt of the February 21, 2008 letter by the PRRB.

38.     Despite Plaintiffs' efforts to point out their compliance with the PRRB's rules and instructions, the PRRB has failed to re-institute Plaintiffs' appeals.  Moreover, the PRRB has offered no reasoned explanation for maintaining its position to dismiss each of Plaintiffs' appeals, despite Plaintiffs' proof of compliance with the mandated instructions.  Its failure to explain its reasoning in its actions to dismiss is in and of itself unreasonable.

39.     This suit was filed within 60 days of the PRRB's dismissal, with prejudice, Plaintiffs' PRRB appeals.  This case is ripe for judicial intervention, and the court has jurisdiction over this case.

40.     Title 42, Part 412.106(b)(4) of the Code of Federal Regulations requires that General Relief days be included in the Medicaid proxy of the DSH calculation.  To the extent that the

Secretary has interpreted the provision to the contrary, that interpretation is incorrect, unlawful and void.

41.    In the alternative, to the extent that Part 412.106(b)(4) purports to preclude the inclusion of General Relief days in the DSH calculation, that aspect of the regulation contravenes the medicare statute and is unlawful, ultra vires, and void.

## COUNT 1 – DECLARATORY JUDGMENT: ABUSE OF DISCRETION

42.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 41 as if fully seat forth at length, below.

43.    Pursuant to 42 U.S.C. § 1395oo(a), Plaintiffs were entitled to a hearing before the PRRB concerning the amounts of the Medicaid proxy used to calculate each Plaintiffs' DSH payment for fiscal year ending 1997.

44.    The Secretary, by and through the actions of the PRRB, has violated the rights of Plaintiffs, by, among other things, denying Plaintiffs' right to pursue appeals by closing and dismissing the relevant case and removing it from the Board's docket for unreasonable and unfounded reasons.

45.    The Secretary, by and through the actions of the PRRB, acted arbitrarily, capriciously, displayed disparate treatment towards each Plaintiff, and violated Plaintiffs' rights to the equal protection of laws afforded by the United States Constitution.

46.    By dismissing each Plaintiff's claim for lack of jurisdiction, the PRRB has deprived the Plaintiffs of their property and rights, without substantive or procedural due process in violation of the Fifth Amendment of the United States Constitution.

## COUNT II – DECLARATORY JUDGMENT - VIOLATION OF THE MEDICARE STATUTE

47.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 46 as if fully seat forth at length, below.

48.     Ac actual controversy exists under 28 U.S.C. § 2201, <u>et</u> <u>seq.</u> as to whether General Relief days should be included in the DSH calculation.  In particular, Plaintiff COVENANT asserts that the Secretary's current policy of excluding Iowa General Assistance days from the Medicare DSH calculation violates the Medicare statute and is unlawful.

49.     Further, Plaintiff ST. JOSEPH  asserts that the Secretary's current policy of excluding Michigan General Assistance days from the Medicare DSH calculation violates the Medicare statute and is unlawful.

50.     Plaintiffs therefore seek a judicial determination that the Secretary is statutorily required to include General Assistance days in the Medicare DSH calculation for each Plaintiff.

51.     The Intermediary excluded General Relief days from the DSH calculation for eacg Plaintiff's fiscal year 1997.  Plaintiffs seek reimbursement with respect to their individual cost report for that fiscal year.

52.     The Secretary's construction of 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (the Medicaid Proxy of the DSH calculation) is unlawful because it contravenes the statute's plain meaning.  The Secretary's construction is also contradicted by the legislative history.

53.     Under the Medicare statute, so long as a patient is eligible for medical benefits under a State Plan approved under Title XIX, for a particular day for which the patient receives inpatient hospital services, the patient day must be counted in the Medicaid Proxy of the DSH calculation.

-14-

54.    General Assistance  is part of both Iowa and Michigan's State Plans of medical assistance approved under Title XIX.

55.    The Secretary's current policy of excluding General Assistance days from the Medicaid proxy of the DSH calculation therefore violates the Medicare statute and is unlawful.

56.    The Intermediary wrongfully excluded General Assistance Days for each Plaintiff for the fiscal year 1997.

57.    The Medicare statute requires the Secretary, CMS, and the Intermediary to include General Assistance Days in the DSH calculation.  The Secretary should therefore be required to issue payment to each Plaintiff reflecting the inclusion of General Assistance Days, and to recalculate each Plaintiff's DSH adjustment in accordance with the Medicare statute and applicable regulations.

**WHEREFORE,** Plaintiffs request relief as follows:

## COUNT I

(1)    A declaration by the Court that the Secretary, by and through the actions of the PRRB, has acted arbitrarily and capriciously, has abused its discretion, and violated Plaintiff's right 2of the equal protection of the laws under the United States Constitution by dismissing Plaintiffs' PRRB appeals;

(2)    Remanding this matter back to the PRRB, and;

(3)    An order requiring that the PRRB re-institute each Plaintiff's appeal before the PRRB .

## COUNT II

(1)    A declaration by the Court that:

(a)    The Medicare statute requires the inclusion of General Assistance Days in the

Medicaid proxy of the DSH calculation;

(b)    The Secretary's interpretation of 42 C.F.R. 412.106(b)(4) so as to exclude

General Assistance Days from the DSH calculation is unlawful;

(c)    To the extent that 42 C.F.R. 412.106(b)(4) purports to exclude General

Assistance days from the DSH calculation, the regulation violates the Medicare

statute and is unlawful, ultra vires, and void;

(2)    An order requiring that:

(a)    The Secretary instruct the Intermediary in Iowa that Plaintiff, COVENANT's

cost report at issue, to wit: for fiscal year 1997, must be corrected to include General

Assistance Days, and that Plaintiff's DSH adjustment be recalculated in accordance

with the Medicare statute and applicable regulations;

(b)    The Secretary instruct his Intermediary in Iowa to complete its audit, and

make the resulting payment of additional Medicare DSH funds within 90 days of the

Intermediary's receipt of documentation from Plaintiff, COVENANT; and,

(c)    The payments to Plaintiff, COVENANT reflect all amounts to which Plaintiff

is entitled  under the Medicare DSH statute with Iowa General Assistance Days

factored into the calculation and include an award of interest thereon pursuant to 42

U.S.C. § 1395oo(f)(2)

(3)    An order requiring that:

(a)    The Secretary instruct the Intermediary in Michigan that Plaintiff, ST.

JOSEPH's cost report at issue, to wit: for fiscal yar 1997, must be corrected to

include General Assistance Days, and that Plaintiff's DSH adjustment be recalculated

-16-

in accordance with the Medicare statute and applicable regulations;

(b)    The Secretary instruct his Intermediary in Michigan to complete its audit, and make the resulting payment of additional Medicare DSH funds within 90 days of the Intermediary's receipt of documentation from Plaintiff, ST. JOSEPH; and,

(c)    The payments to Plaintiff, ST. JOSEPH reflect all amounts to which Plaintiff is entitled under the Medicare DSH statute with Michigan General Assistance Days factored into the calculation and include an award of interest thereon pursuant to 42 U.S.C. § 1395oo(f)(2)

## AS TO BOTH COUNTS

(1)    A declaration that this Court shall retain jurisdiction in this matter until the Secretary's recalculation of the Hospitals' Medicare DSH percentages and subsequent payments to Plaintiffs is complete and/or the appropriate relief is granted by the PRRB by granting Plaintiffs' request to re-institute each Plaintiff's appeal;

(2)    Attorneys fees and costs of suit incurred by Plaintiffs as permitted by law; and,

(3)    Such other relief as this Court deems just and appropriate.

Respectfully submitted,

Alan J. Sedley (Bar No. OH0017)
LAW OFFICES OF ALAN J. SEDLEY
21550 Oxnard Street    Suite 880
Woodland Hills, CA   91367
Telephone No. (818) 716-6800


By: _____
     ALAN J. SEDLEY

-17-

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670
Phone: 410-786-2671                    FAX: 410-786-5298
Internet: www.cms.hhs.gov/PRRBReview

Suzanne Cochran, Esq., Chairperson
Elaine Crews Powell, CPA
Anjali Mulchandani-West, CPA
Yvette C. Hayes
Michael D. Richards, CPA

Refer to:

07-0394G
CERTIFIED MAIL

J.C. Ravindran, President
Quality Reimbursement Services
150 N. Santa Anita Avenue
Suite 570A
Arcadia, CA 91006

JAN 2 5 2008

**Certified Article Number**

7160 3901 9845 2337 6396

**SENDERS RECORD**

**Certified Article Number**

7160 3901 9845 2337 6372

**SENDERS RECORD**

**Certified Article Number**

7160 3901 9845 2337 6389

**SENDERS RECORD**

RE:  QRS 1997 DSH/General Assistance Days(2)
      Provider Nos. Various
      FYE 6/30/97
      PRRB Case No. 07-0394G

Dear Mr. Ravindran:

The Provider Reimbursement Review Board (Board) has reviewed the submissions in the above-referenced appeal and noted a problem with the statement of the issue and the participants in the group. Set forth below are the Board's concerns.

The Board observes that this group appeal purports to challenge the Intermediaries' failure to include state specific program days (i.e., charity care/state only days) in the disproportionate share (DSH) calculation but the Providers are from multiple states. This appears to violate the principle of a group appeal which limits the appeal to a single issue in which the evidence and remedy can be applied to all of the Providers in the group.

Within 30 days of the date of this letter you must identify the specific state law you assert is applicable to the Providers in this case, setting out in detail the facts and authorities upon which the appeal is based, including the specific state law under which you assert days of care were furnished that should be counted in the DSH. Further, it appears that both hospitals participating in this group are commonly owned or controlled: St. Joseph Mercy-Oakland is owned by Trinity Health and Covenant Medical Center is owned by Wheaton Franciscan Healthcare. You are to show cause as to why the group is properly constituted or take steps necessary to restructure the case.

Because both of the Providers involved in this case are commonly owned or controlled they are required to file a group appeal with respect to any matters at issue involving a question of fact or interpretation of law, regulation or ruling common to the providers (i.e., they must file a common issue related party (CIRP) group appeal). See, 42 C.F.R. § 405.1841(a)(2). In addition to establishing the State law that governs each Provider's appeal, you must also determine whether the issue must be place in separate CIRP group which would involve other hospitals in the corporate organization. To assure that all of the participants from the chain organization are participating in a group appeal (or a group appeal is not required) we require that you submit an affidavit signed by the home office representative that:

Provider Reimbursement Review Board
Page 2 J.C. Ravindran

CN07-0394G

(1)    Identifies all of the hospitals owned by the corporation in the
       calendar year under appeal;

(2)    State that other commonly owned or controlled Providers are
       not participating in other group appeals of the issue, do not
       have the issue pending in individual appeals nor has a Board
       decision been rendered on the general assistance days issue
       with respect to any Providers in the chain;

(3)    State, if applicable, that other members of the chain which
       are not pursuing the general assistance days issue waive their
       right to do so; and

(4)    Authorizes your representation in this matter for the entire
       corporate organization.

(5)    If there are commonly owned Providers which have not
       received their NPRs they should be identified in this
       affidavit.

The requested information is to be submitted to the Board's offices within
30 days of the date of this letter. Failure to file a timely response may result
in dismissal of the appeal.

Sincerely,

Suzanne Cochran, Esq.
Chairman

cc: Linda Swiderski, NGS (WI)
    Craig Mateer, Cahaba GBA (IA)
    Wilson Leong, BCBSA

# QUALITY REIMBURSEMENT SERVICES
## Healthcare Consultants

<u>Via United Parcel Service</u>

February 21, 2008

Ms. Suzanne Cochran, Esq.
Chairperson
Provider Reimbursement Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

**Re:**    **QRS 1997 DSH General Assistance Days Group (2)**
         **Provider Nos. Various**
         **FYE: 6/30/1997**
         **PRRB Case No. 07-0394G**

Dear Ms. Cochran:

This is in reference to your letter of January 25, 2008.

Before addressing the specific concerns raised in your letter, we wanted to clarify that when establishing this group appeal, we did so in accordance with the Board's instructions for group appeals. Subsequently, we became aware that the Board wishes to have all hospitals with GA type group appeals in the same state grouped together. Therefore, we request the Board approve the under mentioned transfers to State specific General Assistance/Charity Care Group appeals.

<u>Provider to be transferred from PRRB Case No.07-0394GG to QRS DSH Iowa/General Assistance Days Group, PRRB Case No.1733G</u>

      16-0067      Covenant Medical Center          06/30/1997

<u>Provider to be transferred from PRRB Case No.07-0394G to QRS DSH Michigan/General Assistance Days Group, PRRB Case No.07-2446G</u>

      23-0029      St. Joseph Mercy-Oakland          06/30/1997

We are also enclosing an affidavit from a representative from Wheaton Franciscan Healthcare that confirms that no other hospitals in the organization are participating in any other group appeals of this issue.

We are awaiting a similar confirmation from a representative from Trinity Health affirming that no other hospitals in the organization are participating in any other group appeals of this issue. If this is not the case, then we will establish a CIRP group appeal for St. Joseph Mercy-Oakland for FYE 06/30/1997.

If these foregoing transfers are approved, this case can be formally closed.

*150 N. Santa Anita Avenue, Ste 570A, Arcadia, CA 91006 • Tel. (626) 445-5092 • Fax (626) 821-4488*
*Offices in: Spokane, Chicago, Colorado Springs, Detroit & Birmingham*

Suzanne Cochran, Esq.
February 21, 2008
Page 2 of 2

If you have any questions, please feel free to call me at (626) 445-5092.

Sincerely,

J. C. Ravindran
President

cc:     Mr. Craig Mateer, Manager, Provider Audit & Reimbursement, Cahaba Government Benefits
        Administrator. 400 E. Court Avenue, Des Moines, IA  50309-2017

Enclosure

JCR:DR

## AFFIDAVIT OF WHEATON FRANCISCAN HEALTHCARE

I, Trish Means Neuroth, declare as follows:

1. I submit this Affidavit in my capacity as Reimbursement Accountant for Covenant Medical Center. My business address is 3421 West Ninth Street, Waterloo, IA 50702. If called upon, I would and could competently testify to those facts set forth below, except for any facts set forth on information and belief.

2. In response to the inquiries made by the Provider Reimbursement Review Board in its January 25, 2008 letter seeking to have providers clarify which Wheaton Franciscan Healthcare Hospitals in Iowa are participating in PRRB Case No.07-0394G, Affiant states as follows:

    a.     Covenant Medical Center – Waterloo, IA (Provider No.16-0067)

3. As of fiscal year 1997, the fiscal year relevant to the instant matter, there were two additional hospitals in the chain organization of Wheaton Franciscan Healthcare, (1) Sartori Memorial Hospital – Cedar Falls, (2) Mercy Hospital of Franciscan Sisters – Oelwein.

4. Affiant declares that no other Providers commonly owned or controlled by Wheaton Franciscan Healthcare are participating in any other group appeal(s) of the issue at hand that is "DSH/General Assistance Days" nor is this issue pending in individual appeals containing this issue.

5. Affiant declares that other commonly owned or controlled Providers of Wheaton Franciscan Healthcare are not presently participating in PRRB Case No.07-0394G hereby waive their individual rights to do so.

6. There are no commonly owned Providers that have not received NPRs for a fiscal

year end that want to pursue the issue in the group.

7. Quality Reimbursement Services has been authorized to represent Wheaton Franciscan Healthcare in this matter of DSH/General Assistance days for PRRB Case No 07-0394G.

I declare under penalty of perjury, and the laws of the State of Iowa that the foregoing is true and correct.

Dated this 2.1.....day of ...February....., 2008, in Waterloo, Iowa.

Trish Means Neuroth



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670
Phone: 410-786-2671                    FAX: 410-786-5298

Suzanne Cochran, Chairperson
Elaine Crews Powell, CPA
Yvette C. Hayes
Michael D. Richards, CPA

**CERTIFIED MAIL**

**received**
3/22/08

Refer to: 07-0394G

**COPY**

Quality Reimbursement Services
J.C. Ravindran
President
150 N. Santa Anita Avenue, Suite 570A
Arcadia, CA 91006

MAR 2 0 2008

RE:  QRS 1997 DSH/General Assistance Days (2)
Provider No. Various
FYE 6/30/1997
PRRB Case No. 07-0394G

Dear Mr. Ravindran

In a letter (copy enclosed), we advised that this case would be closed if the requested information was not submitted within 30 days. Since we have not received a reply to our request, we hereby close this case and remove it from the Board's docket.

Board Members:
Suzanne Cochran, Esq.
Elaine Crews Powell, CPA
Yvette C. Hayes
Michael D. Richards, CPA

For the Board:

*Elaine Crews Powell*

Board Member

Enclosure: Board's 1/25/08 Letter

cc:  Cahaba Government Benefit Administrators
     Craig Mateer
     400 East Court Street
     Des Moines, IA 50309

     Wilson C. Leong
     BC & BS Association
     225 North Michigan Avenue
     Chicago, IL  60601-7680 2017

# QUALITY REIMBURSEMENT SERVICES
## Healthcare Consultants

<u>Via United Parcel Service</u>



March 31, 2008

Ms. Suzanne Cochran, Esq.
Chairperson
Provider Reimbursement Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

**Re:**  **QRS 1997 DSH General Assistance Days Group (2)**
       **Provider Nos. Various**
       **FYE: 6/30/1997**
       **PRRB Case No. 07-0394G**

Dear Ms. Cochran:

We refer to your letter of 3/20/08 on the above referenced group appeal and herewith confirm that we responded in a timely manner to your letter dated 1/25/08 with our letter dated 2/21/08 (copy enclosed).

We also take this opportunity to enclose herewith a copy of our United Parcel Service tracking label dated 2/21/08 and evidence of receipt of our letter at your establishment at 11.29 a.m. on 2/22/08.

In view of the foregoing, we wish to request the reinstatement of the above group appeal and a determination from you on the transfer requests contained in our letter of 2/21/08.

If you have any questions, please feel free to call me at (626) 445-5092.

Sincerely,

J. C. Ravindran
President

cc:    Mr. Craig Mateer, Manager, Provider Audit & Reimbursement, Cahaba Safeguard Administrators, 400 E. Court Avenue, Des Moines, IA 50309-2017

       Mr. Alan J. Sedley, Esq., 21550 Oxnard Street, Suite 880, Woodland Hills, CA 91367

Enclosure

JCR:DR

*150 N. Santa Anita Avenue, Ste. 570A, Arcadia, CA 91006 • Tel. (626) 445-5092 • Fax (626) 821-4488*
*Offices in : Spokane, Chicago, Colorado Springs, Detroit & Birmingham*



## Shipment Receipt

**Transaction Date:**          21 Feb 2008
**Tracking Number:**          1ZF902551396905193

---

### Address Information

**Ship To:**
Provider Reimbursement
Review Board
Suzanne Cochran, Esq.,
Chairperson
2520 Lord Baltimore Dr.,
Suite L
BALTIMORE MD 21244-2670

Telephone: (410) 786-5591

**Ship From:**
Quality Reimbursement
Services
J.C. Ravindran
150 N Santa Anita Ave
RM. 570A, FL. 5
Arcadia CA 91006

Telephone: (626) 445-5092

**Return Address:**
Quality Reimbursement
Services
J.C. Ravindran
150 N Santa Anita Ave
RM. 570A, FL. 5
Arcadia CA 91006

Telephone: (626) 445-5092

---

### Package Information

| Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|
| Letter | UPS Letter | | {Reference#1 - Ltr QRS 97 GA Day Grp (20 Transfers} |

---

### UPS Shipping Service and Shipping Options

**Service:**
UPS Next Day Air Saver

**Shipping Fees Subtotal:**                                                      **23.70 USD**

**Transportation**                                                                20.00 USD
**Fuel Surcharge**                                                                 3.70 USD

**Additional Shipping Options:**

**Quantum View Notify E-mail Notifications:**                                    No Charge
1.
corporate@qualityreimbursement.com Ship; Delivery
E-mail Failure Notification:          corporate@qualityreimbursement.com

---

### Payment Information

**Bill Shipping Charges to:**          Shipper's Account F90255

**Total Charged:**                                                               **23.70 USD**

Note: Your invoice may vary from the displayed reference rates.

**Responsibility for Loss or Damage**
Unless a greater value is recorded in the declared value field as appropriate for the UPS shipping system

https://www.ups.com/uis/create?ActionOriginPair=print ... UPSReceipt&POPUP_LEVEL...



⊠Close Window

# Tracking Summary

### Tracking Numbers

| | |
|---|---|
| **Tracking Number:** | 1Z F90 255 13 9690 519 3 |
| Type: | Package |
| Status: | **Delivered** |
| Delivered On: | 02/22/2008 |
| | 11:29 A.M. |
| Delivered To: | WINDSOR MILL, MD, US |
| Signed By: | WORD |
| Service: | NEXT DAY AIR SAVER |

Tracking results provided by UPS: 03/25/2008 6:27 P.M. ET

NOTICE: UPS authorizes you to use UPS tracking systems solely to track shipments
tendered by or for you to UPS for delivery and for no other purpose. Any other use of UPS
tracking systems and information is strictly prohibited.

⊠Close Window

Copyright © 1994-2008 United Parcel Service of America, Inc. All rights reserved.

UPS Internet Shipping: Label/Receipt

Page 2 of 3



# Shipment Receipt

**Transaction Date:**    31 Mar 2008
**Tracking Number:**     1ZF902551397457201

### Address Information

**Ship To:**
Provider Reimbursement
Review Board
Suzanne Cochran, Esq.,
Chairperson
2520 Lord Baltimore Dr.,
Suite L
BALTIMORE MD 21244-
2670

Telephone: (410) 786-5591

**Ship From:**
Quality Reimbursement
Services
J.C. Ravindran
150 N Santa Anita Ave
RM. 570A, FL. 5
Arcadia CA 91006

Telephone: (626) 445-5092

**Return Address:**
Quality Reimbursement
Services
J.C. Ravindran
150 N Santa Anita Ave
RM. 570A, FL. 5
Arcadia CA 91006

Telephone: (626) 445-5092

### Package Information

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter | UPS Letter | | {Reference#1 - QRS 97 GA Days Req for Reinstatemnt} |

### UPS Shipping Service and Shipping Options

**Service:**
UPS Next Day Air Saver
**Guaranteed By:**[1]
3:00 PM Tuesday, 4/1/2008

| **Shipping Fees Subtotal:** | **23.70 USD** |
|---|---|
| Transportation | 20.00 USD |
| Fuel Surcharge | 3.70 USD |

**Additional Shipping Options:**
**Quantum View Notify E-mail Notifications:**                        No Charge
1.
corporate@qualityreimbursement.com Ship; Delivery
E-mail Failure Notification:          corporate@qualityreimbursement.com

### Payment Information

ill Shipping Charges to:      Shipper's Account F90255

| **Total Charged:** | **23.70 USD** |
|---|---|

Note: Your invoice may vary from the displayed reference rates.



# Shipment Receipt

**Transaction Date:**          31 Mar 2008
**Tracking Number:**           1ZF902550297407624

---

### Address Information

**Ship To:**                   **Ship From:**                        **Return Address:**
Cahaba Safeguard               Quality Reimbursement                 Quality Reimbursement
Administrators                 Services                              Services
Mr. Craig Mateer               J.C. Ravindran                        J.C. Ravindran
400 E Court Ave                150 N Santa Anita Ave                 150 N Santa Anita Ave
DES MOINES IA 50309-           RM. 570A, FL. 5                       RM. 570A, FL. 5
2017                           Arcadia CA 91006                      Arcadia CA 91006

Telephone: (515) 248-7000      Telephone: (626) 445-5092             Telephone: (626) 445-5092

---

### Package Information

| Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|--------|------------------------|----------------|-------------------|
| etter  | UPS Letter             |                | {Reference#1 - QRS 97 GA Days Req for Reinstatemnt} |

---

### UPS Shipping Service and Shipping Options

**Service:**
UPS 2nd Day Air
**Guaranteed By:**[1]
End of Day Wednesday, 4/2/2008

**Shipping Fees Subtotal:**                                          14.58 USD

Transportation                                                      12.30 USD
Fuel Surcharge                                                       2.28 USD

**Additional Shipping Options:**
**Quantum View Notify E-mail Notifications:**                        No Charge
1.
corporate@qualityreimbursement.com Ship; Delivery
E-mail Failure Notification:          corporate@qualityreimbursement.com

---

### Payment Information

**Bill Shipping Charges to:**          Shipper's Account F90255

**tal Charged:**                                                     14.58 USD

Note: Your invoice may vary from the displayed reference rates.

[1] For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service
representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international

08-854
RBW

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| COVENANT MEDICAL CENTER; ST. JOSEPH MERCY OAKLAND     88888 | MICHAEL O. LEAVITT, IN HIS CAPACITY AS SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

88888

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Law Offices of Alan J. Sedley
Alan J. Sedley, Esq.
21550 Oxnard Street  Suite 880
Woodland Hills, CA  91367   (818) 716-6800

Case: 1:08-cv-00854
Assigned To : Walton, Reggie B.
Assign. Date : 5/19/2008
Description: Admn. Agency Review

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
     Plaintiff

○ 3 Federal Question
     (U.S. Government Not a Party)

◉ 2 U.S. Government
     Defendant

○ 4 Diversity
     (Indicate Citizenship of
     Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| ○ A. *Antitrust* | ○ B. *Personal Injury/ Malpractice* | ◉ C. *Administrative Agency Review* | ○ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☒ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. *General Civil (Other)* | OR | ○ F. *Pro Se General Civil* |
|---|---|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant)<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

③

| **G. Habeas Corpus/ 2255** | **H. Employment Discrimination** | **I. FOIA/PRIVACY ACT** | **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| **K. Labor/ERISA (non-employment)** | **L. Other Civil Rights (non-employment)** | **M. Contract** | **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 U.S.C. SEC 1395oo(f) and 28 U.S.C. SEC 1331- JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | **DEMAND $** _____ | Check YES only if demanded in complaint |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☐   NO ☒ |

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  May 16, 2008   SIGNATURE OF ATTORNEY OF RECORD   *[signature]*

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.